UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA YVETTE BARELA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security<br><br>Defendant. | **1:13-cv-001994 GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Melinda Yvette Barela ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income payments under Title XVI of the Social Security Act. The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* In applying the substantial evidence test, courts review the record as a whole. *Lamb v. Mathews*, 546 F.2d 814, 818 n. 6 (9th Cir. 1976). Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

**DISCUSSION**

**A. The ALJ Properly Evaluated Plaintiff's Visual Impairment**

Plaintiff argues that the ALJ improperly "rejected the presence of a visual impairment." Doc. 14 at 8. Plaintiff further argues that the Commissioner should have obtained a consultative examination with regard to Plaintiff's visual impairment because "the extent of the visual field loss and the impact of [the] visual field loss on the ability to engage in work activity" are not resolved in the record. *See* 20 C.F.R. § 416.919(a) (an ALJ may request a consultative examination when there are inconsistencies in the evidence or the evidence is insufficient to support a decision on a claim). The Commissioner responds that the ALJ properly evaluated Plaintiff's visual impairment and was not required to obtain a consultative examination regarding the visual impairment because (1) the record reflects no functional limitations whatsoever on

---

[2] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 & 8.

account of the visual impairment; (2) nothing in the record suggests that Plaintiff suffered from a disabling visual impairment for a continuous period of at least twelve months or that she was expected to do so; and (3) the ALJ properly discounted Plaintiff's allegations regarding her visual limitations.  Doc. 15 at 7-8.

      (i)    <u>The ALJ Properly Found that Plaintiff did not have a Disabling Impairment that Satisfied the Applicable Durational Requirement</u>

The Court concludes that the ALJ's findings regarding Plaintiff's visual impairment are free of legal error and supported by substantial evidence.  The ALJ noted that on September 29, 2006, the Plaintiff "underwent a pars plana vitrectomy about the right eye due to proliferative diabetic retinopathy, a vitreous hemorrhage, and an epiretinal membrane."  AR 20; 308.  The ALJ further noted that Plaintiff alleged at the administrative hearing that she was experiencing "blurred vision" and "worsening peripheral vision on the right."  AR 20; 72; 444.  However, the ALJ found that "there is little evidence that the claimant's impairment caused more than minimal functional limitations for more than 12 continuous months."  AR 20.

The ALJ supported his findings with reference to the medical evidence.  Specifically, he stated that although Plaintiff had eye surgery to treat a vitreous hemorrhage in the right eye in September 2006, "[b]y October 23, 200[6], retinal care progress notes state that the claimant was '[d]oing well' and that no retinal therapy was required post surgery."  AR 20; 308; 312.  Next, he noted that on October 5, 2010, Plaintiff's optometrist confirmed that her eye condition was "stable."  AR 20; 332.  The ALJ also referenced "an August 29, 2011 opinion by treating retinal specialist Robert Equi, M.D.," which "states that the claimant has a corrected visual acuity of 20/30 OD and 20/20 OS."[3]  AR 20; 296.  The ALJ noted that "Dr. Equi stated that he had not

---

[3] The treatment record referenced by the ALJ was prepared by Dr. Robert Equi on August 29, 2011, in response to a records request submitted by the state agency in connection with Plaintiff's disability application.  AR 296.  The treatment record states that Plaintiff had a corrected visual acuity of 20/30 OD and 20/20 OS, based on an examination conducted on August 27, 2007.  *Id.*  The record further states that Plaintiff failed to attend her follow-up

treated the claimant since 2007." AR 20; 296. Finally, the ALJ observed that when Plaintiff presented with complaints of visual problems to her treating retinal specialists on May 7, 2012, "she was merely given education and advised to return to care if her symptoms increased." AR 20; 402-403. The ALJ also noted that the medical record did not reflect any functional limitations related to Plaintiff's visual impairment. As a result, in light of the medical record evidence, he found that the Plaintiff's visual impairment did not constitute a severe, disabling impairment that met the applicable durational requirement. AR 20 ("there is little evidence that the claimant's impairment satisfied the durational requirement necessary to establish a severe, disabling impairment"); *see* 20 C.F.R. § 416.909.

The ALJ's findings regarding Plaintiff's visual impairment are not legally erroneous and are supported by substantial evidence. In August 2007, following her 2006 right-eye vitrectomy, Plaintiff had 20/30 vision in her right eye and 20/20 vision in her left eye, with correction. AR 296. Dr. Odette Yang and/or Dr. Richard Yang, Plaintiff's treating optometrists at Gateway Optometric Center, examined Plaintiff in May 2009, October 2010, and November 2011 and, on all three occasions, found that she had 20/20 vision in both eyes, with correction. AR 456; 452; 448. As the ALJ noted, Dr. Odette Yang found Plaintiff's eye condition to be "stable" in October 2010, and recommended routine eye exams on a yearly or as needed basis. On May 7, 2012, Plaintiff went to her treating eye-specialist, Dr. Robert Equi, at Retinal Consultants Medical Group, Inc., for a self-referred consultation for mild symptoms. AR 401. Plaintiff underwent an eye exam and further testing. Plaintiff's eye exam yielded basically normal results. Plaintiff was found to have 20/25 vision in both eyes with correction and a normal visual field in both eyes. AR 402. Plaintiff's Fluorescein Angiography and Fundus Photography results revealed that her proliferative diabetic retinopathy (PDR) was "regressed" instead of "active." AR 407.

---

appointment that was scheduled for six months after the August 27, 2007 examination, and had, in fact, not been seen by Dr. Equi since 2007.

Consultative Examiner Frank Chen, M.D., conducted a physical examination of Plaintiff on March 16, 2011; he found that Plaintiff had 20/20 vision in both eyes with correction and did not detect any abnormalities. AR 353. Similarly, Plaintiff had normal findings as to her eyes (PERRLA, conjunctivae and sclerae clear; vision grossly normal; no abnormal findings) during a physical examination conducted on August 28, 2012 by her primary-care providers, Shobha Sekhon, M.D./Cynthia Berube, F.N.P.. AR 353; 417.

Plaintiff argues that the ALJ did not properly assess records from a September 4, 2012 eye examination by her optometrist, Dr. Odette Yang, that took place 3 days before her September 7, 2012 administrative hearing. On September 4, 2012, Plaintiff presented to Dr. Yang complaining of blurry vision in her left eye that she believed stemmed from retinal bleeding. AR 444. Plaintiff reported that the symptoms had been present for two weeks. AR 444. Plaintiff also stated that her right eye was stable and that she had recently seen Dr. Equi for a "Dfe" or Dilated Fundus Examination of the inner surfaces of the eye. [4] AR 444. Dr. Yang referred Plaintiff back to Dr. Equi, her retinal specialist, for a "possible vitreal heme os," i.e., a possible vitreous hemorrhage of the left eye. AR 447; 463. Dr. Yang noted that Plaintiff's symptoms were a "non-emergency" and that it was "okay to wait," but that Plaintiff should be seen and should schedule an appointment with Dr. Equi. AR 447. Dr. Yang also noted that Plaintiff had 20/20 vision in her right eye, with correction, and 20/20 vision, with correction, when using both eyes. AR 447. At her administrative hearing a few days later, on September 7, 2012, Plaintiff testified that she had blurry vision in her left eye because of "jelly that's floating around in there," which her doctor would "need to go in and do surgery and remove so the blurriness will clear up." AR 72.

The ALJ considered Plaintiff's allegations of blurred vision and worsening peripheral vision that she reported at her administrative hearing. Plaintiff had also reported these symptoms

---

[4] Plaintiff appears to be referring to her examination by Dr. Equi on May 7, 2012. AR 401-408.

to Dr. Yang just days before. Plaintiff told Dr. Yang that she had experienced these symptoms for two weeks. However, there is no evidence in the record that Plaintiff's symptoms resulted in any functional limitations or that they were expected to last for a continuous period of at least 12 months. *See* 20 C.F.R. § 416.912(c) ("[a claimant] must provide evidence ... showing how [the alleged] impairment(s) affects ... [his or her] functioning"). Plaintiff did not submit further records to the ALJ or to the Appeals Council regarding any follow-up diagnostic workup or treatment obtained from Dr. Equi regarding these symptoms. *See Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982) (the "existence" of an impairment is not "*per se* disabling;" "[i]n addition, there must be proof of the impairment's disabling severity"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("[t]he claimant carries the initial burden of proving a disability in steps one through four of the analysis"). The ALJ thus correctly found that "there is little evidence that the claimant's [visual] impairment caused more than minimal functional limitations" for at least "12 continuous months." AR 20; 20 C.F.R. § 416.909.

  (ii) <u>The ALJ was not Required to Obtain a Consultative Examination for Plaintiff's Visual Impairment</u>

Plaintiff argues that the ALJ should have obtained a consultative examination because "it is not clear whether [Plaintiff's visual field] losses meet or equal the losses required" by Listing 2.03 (contraction of visual field). Doc. 14 at 9, citing 20 C.F.R. part 404, subpart P, Appendix 1, Listing 2.03. At step three of the sequential evaluation process, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (an impairment *meets* a listing if it satisfies all of the specified medical criteria); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir.2001) (plaintiff must present a plausible theory as to how an impairment or combination of impairments *equals* a listed impairment). The claimant bears the burden of proving he has an impairment that

6

meets or equals a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff's argument that the ALJ was required to obtain a consultative examination to determine whether Plaintiff's visual impairment met or equaled Listing 2.03 (contraction of visual field) is unavailing. First, Plaintiff does not explain what criteria are established by Listing 2.03 and whether Plaintiff's visual impairment *meets* any of these criteria. *See, e.g.*, *Lloyd v. Astrue*, 2013 WL 503389, at *4 (N.D. Cal. Feb. 8, 2013). Next, Plaintiff does not present any theory as to how her visual impairment would *equal* the criteria set forth in Listing 2.03. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir.2001) (plaintiff must present a plausible theory as to how an impairment or combination of impairments *equals* a listed impairment). Furthermore, progress notes from an eye examination conducted on May 7, 2012 at Retinal Consultants Medical Group, Inc. notes that Plaintiff had a normal visual field in both eyes.[5] AR 402. Finally, the criteria to be evaluated pursuant to Listing 2.03 are directed to a claimant's "better eye," which in Plaintiff's case would be her right eye (based on Dr. Odette Yang's September 4, 2012 examination). 20 C.F.R. pt. 404 subpt. P, app. 1 § 2.03; AR 444. In her report of Plaintiff's September 4, 2012 eye examination, Dr. Yang noted that Plaintiff's right eye was stable and had 20/20 vision with correction; Dr. Yang further noted that when using both eyes, Plaintiff had 20/20 vision with correction. AR 444. The medical record evidence, as a whole, is not inconsistent or insufficient for the ALJ to properly evaluate the disabling effects of Plaintiff's visual impairment. Therefore, the ALJ was not required to obtain a consultative examination for Plaintiff's visual impairment. *See* 20 C.F.R. § 416.919(a).

In sum, the ALJ properly determined that Plaintiff did not have a severe, disabling visual impairment for the required duration. *See* 20 C.F.R. § 416.909. Furthermore, because the

---

[5] Plaintiff alleges that Plaintiff's progress notes from August 2007, AR 299, "record the presence of a visual field defect in the central and peripheral fields." Doc. 14 at 8. However, the progress note cited does not appear to indicate any visual field abnormalities.

7

evidence is clear and the record is sufficient to support the ALJ's resolution of Plaintiff's disability claim, the ALJ was not required to obtain a consultative examination regarding Plaintiff's visual impairment.  *See* 20 C.F.R. § 416.919(a).

### B. In Light of the ALJ's Step Five Determination, any Error at Step Four is Harmless

Plaintiff argues that the ALJ committed reversible error in finding Plaintiff not disabled at step four of the sequential disability determination process.  Specifically, Plaintiff challenges the ALJ's step-four finding that Plaintiff could perform her past relevant work as a babysitter and a caregiver companion.  Plaintiff alleges that "[t]he ALJ lacked a substantial evidentiary basis for finding substantial gainful activity in 2006 through 2009," because Plaintiff worked part-time during that period and "[t]he earnings records cited by the ALJ do not plausibly support the conclusion" that Plaintiff's past relevant constituted substantial gainful activity.  Doc. 14 at 7-8.  The Commissioner does not contest Plaintiff's contention that Plaintiff's work as a babysitter and caregiver did not constitute substantial gainful activity and, therefore, cannot be considered as past relevant work at step four of the disability analysis.  *See* 20 C.F.R. § 416.920(b)(1).  Rather, the Commissioner argues that "[e]ven if one assumes that the ALJ erred in finding that Plaintiff could perform her PRW, such an error was harmless because the ALJ properly determined at step five that she could perform other work in significant numbers in the national economy."  Doc. 15 at 10-11.  Plaintiff does not challenge the ALJ's step five findings.

The Court finds that any error at step four is rendered harmless by the ALJ's step five findings, which are not challenged by Plaintiff.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ's erroneous step-four finding that claimant could return to past relevant work was harmless in light of the ALJ's alternative finding at step five that claimant could still perform other work in the national and local economies); *Reynolds v. Astrue*, 252 Fed. Appx. 161, 165 (9th Cir. 2007) (ALJ's step four errors were harmless in light of ALJ's RFC assessment and

8

step-five determination); *Baines v. Astrue*, 781 F. Supp.2d 228, 237-38 (D. Del. 2011) ("[e]rroneous step four findings can be rendered harmless by the identification of other work consistent with a plaintiff's RFC at step five").

Here, the ALJ drew on the VE's testimony to determine at step five that Plaintiff could perform work as an office helper, toy assembler, and food and beverage order clerk. AR 26, 82-83. Plaintiff does not argue that the ALJ's step five findings are inconsistent with Plaintiff's assessed RFC or otherwise improper. Therefore, in light of the ALJ's step five finding, the Court will not disturb the Commissioner's determination that Plaintiff is not disabled.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Melinda Yvette Barela.

IT IS SO ORDERED.

Dated:  **February 27, 2015**                    **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE